**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**COLORADO SPRINGS DIVISION**

| | | |
|---|---|---|
| Priscilla Ann Thompson, individually and as Proposed Independent Administrator of the Estate of Jamarr Thompson, | ) ) ) ) | Case No: |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT** (Jury Trial Demanded) |
| The United States of America | ) ) | |
| Defendant, | ) ) ) | |

## NATURE OF THE CASE

Plaintiff, individually and as Proposed Independent Administrator of the Estate of Jamarr Thompson, files this Complaint by and through undersigned counsel of record against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2410, 2671, *et seq.*, for negligent and reckless conduct leading to the death of Jamarr Thompson at The United States Penitentiary, Florence High ("USP Florence High") in Fremont County, Colorado, on December 6, 2021. As a direct and proximate result of Defendant's conduct, the Plaintiff sustained actual injuries and damages, and in support thereof alleges as follows:

## PARTIES

1. Plaintiff Priscilla Ann Thompson ("Plaintiff") is a citizen and resident of Fort Worth, Texas. Plaintiff is the mother of Jamarr Thompson and the Proposed Independent Administrator of the Estate of Jamarr Thompson, having filed her application for appointment in the Probate Court of Tarrant County, Texas, on November 19, 2024.

2.      At all times relevant to this Complaint, decedent Jamarr Thompson ("Decedent Thompson," "Mr. Thompson"), aged 33 years old, was an inmate with the Federal Bureau of Prisons.

3.      At all times relevant to this Complaint, the United States of America, through the Federal Bureau of Prisons ("BOP"), a division of the United States Department of Justice, has operated USP Florence High in Fremont County, Colorado, housing individuals convicted of crimes against the United States of America.

## JURISDICTION AND VENUE

4.      This action is an action for money damages brought pursuant to the Federal Tort Claims Act ("FTCA") at 28 U.S.C. §§ 2671, *et seq*., and under the common law against the United States of America.

5.      Subject matter jurisdiction is conferred upon the Court by 28 U.S.C. § 1346(b)(1).

6.      Under the FTCA, venue is proper in this Court because it is the judicial district wherein the act or omission complained of occurred.  28 U.S.C. § 1391(e)(1)(B); 28 U.S.C. § 1402(b).

7.      This action also arises pursuant to and involves questions requiring the interpretation of the laws of the United States.

8.      Jurisdiction and venue are therefore proper before this Court pursuant to 28 U.S.C. § 1331, § 1346, and § 1391.

## FACTUAL ALLEGATIONS

9.      At all times relevant to this Complaint, Decedent Thompson was a vulnerable federal inmate suffering from severe mental health disorders, including schizophrenia.

10.    Prior to being housed at USP Florence High, Mr. Thompson was housed at Federal Medical Center (FMC) Fort Worth, an administrative security facility for federal inmates with special medical and mental health needs.

11.    In March 2021, for reasons not yet known, Mr. Thompson was transferred to USP Florence High, a high security penitentiary housing violent offenders.

12.    Because he was previously housed at FMC Fort Worth and was thus known to be suffering from severe mental health disorders and was known to be a vulnerable inmate with special mental health needs, Mr. Thompson was not an appropriate candidate for USP Florence High.

13.    Defendant routinely short staffed USP Florence High of corrections officers and personnel to such an extent that it adversely impacted its ability to provide adequate security at the prison.[1]

14.    As a result of the shortage, correctional officers were forced to work more mandatory overtime, with many often required to work multiple 8-hour overtime shifts per week.

15.    Due to the shortage of correctional officers, other staff, including teachers, cooks, and maintenance workers, were forced to "fill in" for guard duty.[2]

---

[1] *See* https://www.denverpost.com/2021/12/24/federal-prison-florence-staff-shortage/ (indicating that nearly a third of the 476 correctional officer positions at the Florence Correctional Complex remained unfilled in December 2021); https://www.nytimes.com/2023/05/01/us/politics/prison-guards-teachers-staff.html (indicating that the Local 1169 of the American Federation of Government Employees estimated the facility to be understaffed by 30 to 40 vacancies a day).

[2]    *See*    https://www.nytimes.com/2023/05/01/us/politics/prison-guards-teachers-staff.html (explaining how teachers, case managers, counselors, facilities workers, and secretaries were enlisted to serve as corrections officers despite having only basic security training); https://www.denverpost.com/2021/12/24/federal-prison-florence-staff-shortage/ (indicating that teachers, cooks, and maintenance workers were filling in on guard duty).

16.     Upon information and belief, such staff members were neither qualified nor trained to provide security services as corrections officers at the prison.

17.     During 2021, the Florence Correctional Complex (FCC), comprised of four facilities including USP Florence High, recorded eight (8) serious assaults on inmates and one (1) serious assault on staff.[3]

18.     Mr. Thompson was one of two inmates who died in 2021 at USP Florence High from violence.[4]

19.     Defendant continued to understaff USP Florence High, notwithstanding its knowledge that inmates were assaulting other inmates on a regular basis.

20.     Upon information and belief, Defendant and its correction staff had knowledge of numerous assaults occurring in USP Florence perpetrated with contraband weapons.  However, upon information and belief, Defendant routinely failed to comply with security policies for conducting regular searches for contraband weapons at the facility.

21.     Further, upon information and belief, Defendant and its correction staff routinely failed to comply with security policies for proper supervision and lockdown of cells to prevent inmate violence.

22.     On or about December 6, 2021, Mr. Thompson was occupying cell #231 at USP Florence High.

23.     Cell #231 is located on the second story of their housing unit at the top of a stairway.

---

[3] https://www.denverpost.com/2021/12/24/federal-prison-florence-staff-shortage/
[4] https://www.denverpost.com/2021/12/24/federal-prison-florence-staff-shortage/

24. On December 6, 2021, an inmate began stabbing Mr. Thompson with a contraband weapon inside cell #231.

25. Another inmate held the cell door shut to prevent Mr. Thompson from escaping.

26. Upon information and belief, at no time did any corrections officer attempt to intervene during the attack in his cell.

27. Mr. Thompson was stabbed multiple times before he was eventually able to escape the cell and try to run for help.

28. The assault continued outside the cell and down the stairs before Mr. Thompson ultimately collapsed to the floor in front of the BOP officers' cage, where he died in a pool of blood.

29. Upon information and belief, no corrections officer took any action during this portion of the attack until Mr. Thompson collapsed in front of the cage.

30. An autopsy later determined that Mr. Thompson suffered stab wounds to his anterior neck, left neck, left clavicle, left chest, and posterior left shoulder, as well as an incised wound of his left wrist, significant hemorrhaging, including left omohyoid muscle hemorrhage and severe hemorrhage into the mediastinal soft tissues extending to the lung hilar tissues, multiple contusions, and multiple abrasions.

31. Plaintiff filed a claim via Form F95 with the Federal Bureau of Prisons by serving it on the General Counsel for BOP on November 17, 2023.

32. On June 17, 2024, Plaintiff received a letter dated June 6, 2024, denying her claims.

**FOR A FIRST CAUSE OF ACTION**
**(Negligence, Negligent Training, and Negligent Supervision**
**pursuant to the Federal Tort Claims Act)**

5

33.    Plaintiff repeats and realleges the factual allegations contained in Paragraphs 1–32 as if fully restated herein.

34.    Plaintiff brings this action for negligence against The United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2410, and 2671, *et seq*.

35.    At all times relevant to this complaint, the corrections staff at USP Florence High were employees and/or agents of The United States, which funds USP Florence High and manages it pursuant to the authority vested in the Federal Bureau of Prisons, and were acting within the course and scope of their employment, in furtherance of the interests of The United States, and with the United States' knowledge and consent.

36.    The United States is liable for the actions and omissions of its employees and/or agents that gave rise to this action.

37.    The United States has knowledge that housing violent offenders in any BOP facility, and USP Florence High in particular, creates a particularly dangerous condition and carries risks which it has a duty to protect its housed inmates against.

38.    The United States, by and through its employees and agents, owed a duty to Plaintiff, including the special duty to him while in their custody to act in a prudent and reasonable manner with regard to his health and safety in the following particulars, to wit:

   a.    to confine him in a manner that is appropriate for his severe mental health issues and vulnerability in order to ensure his security;

   b.    to properly staff USP Florence High;

   c.    to ensure staff supervision of him in his cell at all times;

6

d.  to confine him in accordance with policy and guidelines to ensure his safety and security;

e.  to prevent attacks on him by other inmates;

f.  to enforce its own policies with respect to the possession of contraband and the search for and removal thereof; and

g.  to intervene during attacks on its premises.

39.  The United States also owed ministerial duties in the following particulars, to wit:

a.  to provide responsible and effective operations of USP Florence High;

b.  to establish proper policies, customs, and regulations of USP Florence High;

c.  to supervise its corrections staff;

d.  to properly train and retrain staff charged with security duties at the facility;

e.  to counsel and discipline said staff, and only retain those persons fit for duty; and

f.  to properly correct and remediate any known deficiencies within its staff or within USP Florence High.

40.  Upon information and belief, prior to the incident involving Decedent Thompson, The United States had customs or policies of the following, which upon information and belief still exist at this time:

a.  understaffing USP Florence High;

b.  failing to regularly search for contraband or prison-fashioned weapons;

c.  failing to provide appropriate security for vulnerable inmates with severe mental health diagnoses;

d.  failing to ensure that unsupervised inmates did not have access to each other's cells;

e. failing to intervene in attacks on its premises; and

f. failing to properly train, retrain, supervise, and discipline its corrections staff.

41. The aforementioned failures amounted to violations of non-discretionary and non-delegable duties owed to inmates of USP Florence High, including Decedent Thompson.

42. As such, The United States breached its duties, including ministerial duties, owed to Decedent Thompson.

43. The United States' failure to reprimand or intervene and/or take corrective action against its corrections staff or within USP Florence High is evidence that The United States ratified and promulgated staff misconduct and the conditions inside USP Florence High, and provides further evidence of its breach of duties owed to inmates housed at USP Florence High, including Decedent Thompson.

44. Upon information and belief, in the years prior to the incident involving Decedent Thompson, despite knowledge of the existence of weapons within USP Florence High and violence between detainees, The United States never reviewed or formally amended training and/or policies and/or disciplinary measures and/or supervision techniques to address the threat posed by violent inmates.

45. The continued and repeated failures as described herein resulted in The United States, by and through its corrections staff, breaching the duty it owed by showing an absence of care and/or willfully, wantonly, and recklessly disregarding the life and bodily integrity of Decedent Thompson by allowing him to be attacked by fellow inmates and in failing to intervene.

46. The United States knew or should have known of the dangers posed by its failures illustrated in this Complaint, and that said actions and inactions were reckless and/or constituted

8

the total absence of care likely to result in violations of an inmate's rights, and as such were reasonably foreseeable.

47.    The United States, by and through its duly authorized employees, owed a duty to Decedent Thompson to be reasonable in the management and conduct of USP Florence High.

48.    The United States, by and through its corrections staff, breached duties owed to Decedent Thompson by failing to accommodate appropriate security in light of Decedent Thompson's mental health diagnoses and otherwise failing to ensure that he would not be exposed to excessive violence as a vulnerable inmate, failing to screen his assailant for contraband weapons, failing to supervise inmates, failing to ensure that an unsupervised inmate did not have access to Decedent Thompson's cell, failing to intervene as Decedent Thompson was stabbed numerous times, failing to intervene as an inmate held Decedent Thompson's cell door shut to prevent his escape, and failing to intervene or provide medical attention until Decedent Thompson collapsed on the floor directly in front of the BOP officer cage.

49.    Each act or omission detailed in this matter constitutes a separate occurrence.

50.    The United States' actions and omissions, by and through its authorized agents, were unreasonable, constituted the total absence of care, and breached duties owed to Decedent Thompson.

51.    But for these failures by The United States, the assailant would not have been in possession of a lethal weapon, would not have had access to and thus opportunity to attack Decedent Thompson.

52.     As the result of these failures by The United States, Decedent Thompson experienced fear, excruciating pain from his attack, and sustained multiple stab wounds causing his death.

53.     Plaintiff is entitled to Judgment against The United States for damages as to be determined by the triers of fact in this case.

## JURY DEMAND

**WHEREFORE**, Plaintiff demands a trial by jury and respectfully requests that this Court award the following damages against Defendant, pursuant to the laws of the United States of America, including but not limited to the following:

    a.  Compensatory, actual, and consequential damages to Plaintiff;

    b.  Loss of past and future support and services with interest;

    c.  Loss of earning capacity;

    d.  Such other and further relief as this Court may deem appropriate.


Respectfully submitted, this 26th day of November, 2024.

/s/ Bakari T. Sellers_____
Bakari T. Sellers
Mario A. Pacella
Strom Law Firm, LLC
6923 North Trenholm Road, Suite 200
Columbia, SC  29206

*Attorneys for Plaintiff*

10